is going to be Thomas versus Berryhill. Good morning, and may it please the Court. Mr. Duncan. First, I apologize for the confusion. My time was entered in my calendar as commencing at 9.30. Well, we usually do commence at 9.30, but the last day of the week, this is our getaway day, and we start early. So that's all right. You're not from the 4th Circuit anyway. It's a lesson that I will memorize. That's all right. All right. Your Honors, I'm going to cut to the chase and try to get to the very heart of this case, all right? The function-by-function assessment, the biggest problem with it, and the one that's really the turning point of the case, is the fact that the judge, ALJ, found moderate limitations in concentration, persistence, and pace, and then tried to convert that into an element within the hypothetical question. Under this Court's decision in Mascio, concentration, persistence, and pace must be included and accounted for in the hypothetical question. The question is, is whether the language used in this case was sufficient. Now, there is a significant split within this circuit on that issue, whether fast-paced production, production rate, whatever you want to use, it all comes down to a very basic part. I've cited in footnotes some of the cases. South Carolina has said that it doesn't. Most of the courts there, Maryland and North Carolina, have said that it does constitute sufficient. You mean district courts in those districts? The district courts, yes. Looking at this issue across the country for precedent, there are only a couple of published decisions, one of which is Varga v. Colvin out of the Seventh Circuit, where the court specifically addressed whether fast-paced production was sufficient to address concentration, persistence, and pace. The court ruled that since there was no definition of fast-paced production, they could not, considering that the burden of proof rests with the commissioner on propounding a proper hypothetical question, address and conclude that. Now, I'm familiar with that because I argued Varga before the Seventh Circuit. And you agreed with me yesterday that even if they do it wrong, it could be harmless error. It can be if you can establish that the error would not impact the vocational testimony. But that standard is almost impossible without having a vocational expert testify. There's only one way that if there was an alternative. For instance, if the applicants' counsel had asked a question, instead of fast-paced production, let's assume that the individual had variable-paced production or production that was not and were still jobs provided by the vocational expert. In such a case, then, for counsel to be arguing that fast-paced production is error, that'd be harmless because there's sufficient evidence from the vocational expert to establish what the other terms mean and that there are still jobs that could be performed with alternative functioning. The other case that's been decided is O'Connor-Spiner v. Colvin. It's called O'Connor-Spiner II. It's still another Seventh Circuit case. In that case, the court said the commissioner has offered no evidence to establish that fast-paced production equates with limitations in concentration, persistence, and pace, and we are not going to create one in absence of their providing evidence. Now, the only other courts that have looked at this issue are in Ohio, and it's yet to be addressed. There are two unpublished decisions in Ohio, both implying that they were adopting the Varga standard. You mean the different judges in Ohio? Yes, the two unpublished cases. Did you find those in your paper? No, I just happened to do some research in the Sixth Circuit this morning, actually, in anticipation of this possible question. And the only thing I can tell you about those two cases is there the court held that fast-paced production, even if it was clearly that's what it meant, did not actually address the issue of attention and concentration. Give us two sites. Sure. Brandon v. Berryhill is 2017 WL891782. And Deaton, D-A-T-O-N, v. Commissioner of Social Security, 2013 WL28978888. That's the opposing counsel was also writing down those sites. Did you not advise him this morning of these? No, I did not. I'm sorry. Okay. It would be hard for him to respond to that. I'm a little confused. I thought there were two very straightforward issues. Number one, that the ALJ didn't resolve the apparent conflict between the vocational expert's testimony and the dictionary of occupational titles. That's the second issue, Your Honor, and I will be addressing that. If you'd like, I can go to that position. I just want to make sure. Yeah. You're dealing with the first one where you have to produce evidence, logical explanation, and conclusion. Correct. And I think your position is there's no logical explanation to get to the conclusion. I've tried to narrow it to the primary or the pivotal point in that issue. The judge takes all the limitations, converts them on a function-by-function basis. Attention, concentration, and persistence is the key one. And in this particular case, the judge used or the ALJ used a term that's not defined, not clear, and is subject to variation as a result. And that's not standard that should be applied because of the burden of proof resting on the commissioner. All right? With regard to the second issue, and I'll address that now as well, we have Pearson, however it's actually pronounced, we have no question that this court has held that conflicts have to be addressed. In the testimony of the vocational expert, conflicts between the Dictator of Occupational Titles and the vocational testimony. In this case, we have the ALJ making no inquiry whatsoever. There's nothing in the transcript that shows that the ALJ asked the vocational expert on any conflicts, never addressed any conflicts. It's our position that the language of reasoning under the reasoning definitions in Appendix C of the DOT carries enough variation that under the burden of proof in Pearson, that should be sufficient to have at least triggered the ALJ's inquiry about it. We have reasoning level one, apply common sense understanding and to carry out simple one or two-step instructions, and then two is apply common sense understanding to carry out detailed but uninvolved written or oral instructions. There's enough variation in there as to whether that conflicts with the simple routine and repetitive to have at least triggered it. To say that my client, Ms. Thomas, needed to provide more to establish the conflict, flies in the face of the evidentiary standard laid out in Pearson, which is that the burden rests with the Commissioner, and if it's unclear and a reasonable mind standard under the substantial evidence test, that should be sufficient to trigger it. So, if there are any questions about either of those, I'll reserve the remaining time. Thank you, sir. Thank you. Appreciate it, Mr. Duncan. Mr. Mervis? Good morning, and may it please the Court. David Mervis on behalf of the Commissioner. I'd ask you this morning to affirm the District Court's decision and the ALJ's decision and find that it was supported by substantial evidence, and there are two reasons for that and two issues here. First, the ALJ fully considered the evidence as to Ms. Thomas' mental impairments. The ALJ did so fairly accurately, and I'd say even generously. And second, the ALJ properly relied on testimony from the vocational expert at Step 5. In arguing to the contrary on this second point, Ms. Thomas asks this Court to change course from what it has decided just recently and to take a position that no other circuit court has taken. Because Mr. Duncan started with the evidentiary question as to Ms. Thomas' mental limitations, I'll start there as well. What Mr. Duncan's argued and what the underlying suggestion here is that this Court should impose a per se rule that these specific words don't ever, can never, account for an individual's difficulties, mental impairments, the difficulties caused by those mental impairments. And we'd argue that that's inappropriate just as a matter of basic, under the regulatory framework under which these cases are decided. So as Your Honors are surely aware, each of these cases is based on the facts of those cases, and that's not merely a truism. That's important because one person's mental impairments may impact a person differently than another person's mental impairments. What the ALJ is required to do is to proceed through a sequential evaluation, and one of the steps is to assess in this functional domain of concentration, persistence, and pace. And so that's a general category into which many things can be included, in which many things can be included. So what the ALJ did in this case, the ALJ found that Ms. Thomas had, I believe it was depression, or it was anxiety and a mood disorder. And so because of that and the evidence on those points, the ALJ found that Ms. Thomas had moderate difficulties in concentration, persistence, or pace. So at that stage of the evaluation, that was the finding. Right then and there, the ALJ explained what this particular plaintiff, Ms. Thomas' difficulties were. And the ALJ specifically said, this is at page 20, the ALJ specifically said that Ms. Thomas has reported no problems get, excuse me, excuse me, I was in the wrong place. Page 20, has reported no problems paying attention, finishing what she starts, following instructions, or handling changes in routine. So what she does have a problem with is in handling stress. So what the ALJ found at that point is that her problems are about stress in the work environment. So lo and behold, what the ALJ did in the residual functional capacity finding was include limitations that are directly related to this individual plaintiff's, this individual claimant's issues. So the ALJ included limitations as to the stress that was involved in the work environment. So in addition to being, excuse me, limited to short and simple instructions, she was limited to jobs that did not require production rate or demand pace. Jobs that did not involve crisis situations. Complex decision making. So these are jobs that will eliminate the issues or eliminate the possibility of stress that will cause Ms. Thomas' difficulties. So as a factual matter, there's no question that the ALJ applied the finding that she had made at this first step. It's actually step three in the sequential evaluation. Let me ask you this. Yes. In the residual capacity evaluation, did the ALJ explain how she weighed that evidence? The discussion is, in its entirety, is how the ALJ is considering the evidence. So, yes. I'd say the ALJ noted the evidence on the one side and on the other. So this is page 24. The ALJ has a paragraph discussing sort of the fact that, on the one hand, Ms. Thomas has received treatment for anxiety and her mood disorder. She's been engaged in psychiatric treatment during some of the period at issue. She had medication. So the ALJ is citing records of her treatment. And then the ALJ says, but she also reported that the medications were effective at minimizing the symptoms. That the treatment was, despite the fact that she was engaged in treatment, that it was mostly routine and it was routine and conservative. So that's what the ALJ, at page 24, weighing the evidence on both sides. And I'd point out that what the question here is not simply, it's not on or off. The ALJ included limitations because Ms. Thomas had limitations. Well, that's circular. But if you'll indulge me, the idea being that the ALJ included specific limitations related to this specific claimant. And that's what the commissioner is tasked with doing. So while there are certainly courts in this case, this issue obviously comes up, as Mr. Duncan suggested, it comes up often. But what I'd say is that any per se rule that doesn't examine the facts and what the ALJ actually said about those facts isn't going to be of any use going forward. Because Mascio, which has received much attention in this circuit since 2015, is a specific case about a specific plaintiff. And so Mascio doesn't impose any magic words requirement. Mr. Duncan cites O'Connor Spiner, I guess, and that's in the Seventh Circuit. That case specifically says there's no magic words requirement. There's no specific thing that the ALJ has to include, and then a reviewing court is satisfied. The ALJ has to explain his or her findings. Mascio specifically says perhaps the ALJ can explain why in this particular case, with Ms. Mascio in the later case, those difficulties in concentration, persistence, or pace, did or did not affect her in the residual functional capacity finding. So, again, it's nothing more and nothing less than a question of articulation and of explanation. And here, the ALJ has done that exceedingly well, I would argue. Sometimes you've got cases where the ALJ makes a finding, and then the commissioner has to sort of pull facts from the record to support those findings. That's not what the ALJ did here. The ALJ, specifically at Step 3, right then and there, told this court, told a reviewing court, what this plaintiff's issues were, and then found that she was limited in those specific respects. I'd say that directly undermines the argument here that there's no evidence to support this particular finding. That's the evidence. The ALJ is saying this plaintiff has problems with stress. And then there's no question, there's no allegation that those problems didn't present, or that Ms. Thomas' difficulties were not with stress. And, in fact, I'd say that Ms. Thomas herself completed a function report, and she's asked in this function report, how well do you handle written or spoken instructions? She responded, very well. So the question here is not whether a specific limitation can never or can always account for a specific finding. It's whether this limitation, in this case, can account for it based on what the ALJ said. Turning to the second point, which we sort of previewed here with talking about the instructions. So this is a question about the extent to which the ALJ's finding, relying on the vocational expert's testimony, can be relied on, whether the ALJ can rely on that testimony. And stepping back, why does this happen? This happens because sometimes the ALJ is not a vocational expert. That's true. So sometimes the ALJ needs to ask a vocational expert, what are the specific impacts of this specific set of limitations? And sometimes the vocational expert may need, there may be a double check that's needed. So if there's an apparent conflict between what the vocational expert is telling the ALJ, then- Do you agree there's an apparent conflict here? No, Your Honor. Between short, simple instructions and detailed instructions? No, Your Honor, and I would- How would you define simple? Well, there's two questions here. Simple and detailed aren't the same, right? Quite right, Your Honor. But I would ask this Court to focus not just on the word detailed, but on the phrase that is used in the reasoning level. So detailed but uninvolved is essential. So simple means detailed but uninvolved? I don't think there's- That complicates it even more, doesn't it? Well, no, Your Honor. I would say there's not a, here's the issue, there's not a one-to-one correlation. And that's the problem of that, that's the issue that I'd like to stress to this Court. So while there- Is there a GED level that talks about simple instructions? Simple without any other qualification? No, there isn't. There's a simple one-to-two-step task. Okay, so there is one that talks about simple instructions. Well, I'd say, I'd argue that there is a difference between all of these things, and none of them match perfectly. And that's the reason why there's no one-to-one correlation. That's the reason why the ALJ asks the vocational expert, what does this particular plaintiff and these particular limitations mean? How do they limit him or her? And what are the jobs that can accommodate that? So when there is a one-to-one matching, as there was in this Court held in Henderson, because that used a specific term, one-to-two-step instructions, then there is an apparent conflict. That's what this Court held. Your Honor, Judge King held, and the panel, but in Henderson, that there is a conflict in that case. There's not a conflict in this case. There's not a one-to-one correlation because there is a variety of terms. There's a detailed but uninvolved is simply not the same thing as detailed. So the way that the dictionary defines things is different than the way the vocational expert, or excuse me, than the commissioner in the RFC finding defines things. And so there's not a, because there's not a one-to-one correlation, there's not a, the standard here is not whether, and this is coming directly from this Court's decision in Pearson in 2015. So in the ALJ world of analysis, you don't compare apples to apples. There's no one-to-one, there's no apple that you can look at the apple. You're always looking at apples and oranges, and that's fine. Well, it's not that the ALJ isn't concerned with what the DOT says. The DOT is a resource that the commissioner takes judicial notice of. The question is whether the ALJ and the VE, the vocational expert, are negligent, essentially, in not asking about something. So in Pearson, the case involves, that case involves. Is the question whether they're negligent? Essentially, that's what I would. Error. Well, it's the error is in failing to ask about a conflict, an apparent conflict. Does harmless error apply to those questions? Yes, Your Honor, it does. Are you arguing harmless error here? I'm not arguing that there's error here, but there. Pardon? I am not arguing that there's error. You're not admitting error. That's correct. I'm not admitting error. Correct. Thank you, Your Honor. The next step is what if we find error? Is it harmless? It can certainly be harmless. Yes, Your Honor. So you are arguing harmless error if you have to. Excuse me.  I should have been more precise. That's correct, Your Honor. And I will, if the clerk would stay with me for that moment, for a moment. It's important also to note, so what we've been talking about is a legal question. It's a legal question of what an apparent conflict is and how these two things compare. There's also a factual question here, and that's what we would recommend that this Court look to if there were a question in this Court's mind about whether there's error here. Because as a factual matter, as I noted, Ms. Thomas herself indicated that she handles written instructions very well, that she handles spoken instructions very well. At a psychiatric evaluation, it was noted that she had average intelligence and generally average memory. For much of her life, she worked in what is called a skilled position. So that was, I believe, as a restaurant supervisor. She'd been to college. Your Honor, I apologize. I don't have that. That may well be true. For a year. Okay. Thank you. Thank you, Your Honor. The question I'm trying to get to a while ago, there was evidence from a psychiatrist about her mental state. There's also some evidence that was taken in from her foot doctor. That's right. Now, can we tell from the record what weight she gave the psychiatrist, mental evaluation, as opposed to the foot doctor? Well, the ALJ, not directly, Your Honor. The reason for that is the ALJ isn't required to say, I give these treatment records X weight. So the ALJ does do that with respect to opinion. So there's a specific definition of what a medical opinion is. And that's a statement about the individual's functional abilities, et cetera. But a treatment record, when they go to the doctor and the podiatrist says, I'm going to just note that there's no mental issues that I'm observing, that's evidence. It's not necessarily as compelling as a psychiatric evaluation. How do we know that from this record? Well, we know that the ALJ cited both. So the ALJ didn't ignore the psychiatric treatment records. And the psychiatrist doesn't say, this person can't work, or this person can only do, it doesn't say anything. There's not an opinion from the psychiatrist that the ALJ failed to consider. So the ALJ considered the treatment notes from every source. And so the ALJ is not required to say, this note from January 2014 gets some weight in this note. Because to do that would be. Do you know what that red light means? Yes, Your Honor. Oh, excuse me. I apologize. I will end there unless this Court has any further questions. Thank you. Mr. Duncan. Thank you. I'll address the second issue that was raised first, since that's the one freshest in the Court's mind. We're not taking a stance that there's some sort of per se rule in this particular case, except that the per se rule is the one that the Commissioner established. The Commissioner established the regulations, interpreted them under SSR00-4P, and under our standard, they're the ones who can do that. And then when they have a judge who doesn't apply them correctly, they then say, well, that doesn't matter. And that's the problem I'm having with this case. We're not talking about a real draconian method here. The ALJ simply had to say, is your testimony consistent? And there's an issue that comes up periodically about reasoning level. If I said simple routine or repetitive, does that encompass reasoning level 2 and 3? You have a vocational expert sitting there who can testify to that, right? So that's the problem I'm having with this particular case. It is not difficult. It takes two to three minutes. I will tell you that I instruct, because I do approximately 250 hearings a year, and I instruct my staff and all of the associates I train, we don't use simple routine, repetitive. We use the specific language and the reasoning level we believe applies to the client, which the ALJ could do but doesn't because they're instructed to use this vague terminology. The second point, and I'll go back to the original again, the per se rule. Where in the decision does the judge say that he found that she was limited to fast-paced production because of stress? I didn't see it. I don't see that that even applies because as far as I understand, and I'm not a psychiatrist or psychologist, but you can have anxiety without being under stress. In fact, the testimony is having memory problems while she wasn't working. This is at record page 313. Having memory problems, her thoughts sometimes race, and her mind goes blank. She forgets what she's doing while performing a task. The general definition under the DSM-5, the Diagnostic Statistical Manual published by the American Psychiatric Association, indicates that there are six criteria for generalizing anxiety. Restlessness, feeling keyed up on edge, difficulty concentrating or mind going blank, irritability. If your mind goes blank and you're doing it and it happens while you're not working, are you going to be able to sit and do a job as a marker? A marker is a person who puts all of the price tags on the items. So if you go to Walmart, they're the people with the guns sometimes that are doing it, if you're putting stickers on or marking the things. How accurate are they going to be if their mind goes blank and they're losing stuff because of an occasional anxiety problem? They're not going to be there for very long. Final inspector. If you're inspecting something like the brakes on a car, is that the person that you want to have the mind go blank periodically? And order caller. I'm sure you'll have a lot of sales if in the middle of a call ordering a new sweater, the person you're on the phone with can't remember how to input the order. So again, what we're talking about here is simply, the simple fact is that the judge could have dealt with this issue by providing a definition for the term fast-paced production. He could have asked the vocational expert what the term means. Or does it apply? You were here for the testimony of the claimant. If I use that term, would that seem to apply to the claimant? These people are people who do vocational placement. That's what they do. And so they're used to dealing with these terms. So on that, I thank the Court for your attention. And I will waive the remaining portion of my time. Thank you. Thank you, Mr. Duncan. We appreciate it. We'll adjourn court, sign a die, and then we'll come down and greet counsel. This honorable court stands adjourned. Signed, die. God save the United States and this honorable court.
judges: Robert B. King, Henry F. Floyd, Stephanie D. Thacker